[Civil No. 982.   Filed March 27, 1907.]

[95 Pac. 113.]

OTTO W. H. SCHLEY, Plaintiff and Appellant, v. ED. L. VAIL, PHILIP HUGHES, and C. F. RICHARDSON, Composing the Board of Supervisors of Pima County, Arizona, and F. B. CLOSE, Defendants and Appellees.

1. REV. STATS. ARIZ. 1901, PARS. 4035–4037, CONSTRUED—PUBLIC LANDS —SCHOOL LANDS—"IMPROVEMENTS"—PREFERENCE RIGHT TO LEASE. The sections of Revised Statutes, *supra,* providing that a preferred right to lease school lands shall be given actual *bona fide* settlers who have placed improvements thereon, and defining "improvements" as anything permanent in character, the result of labor, or capital,

enhancing the value of the land, etc., require that a person to ac-
quire a preference right to lease school lands be an actual and *bona
fide* settler, and that he place on the land improvements permanent
in character, the result of labor or capital, which enhance the value
of the land.

2. SAME—PUBLIC LANDS—SCHOOL LANDS—COMPLAINT—SUFFICIENCY.—
A complaint in an action based on plaintiff's preferred right to lease
school land leased to another, which alleges that plaintiff, prior to
the leasing of the land, was in possession thereof and placed thereon
valuable permanent improvements, but which fails to allege that the
improvements are the result of labor or capital, or that the improve-
ments enhance the value of the land, or that the improvements are
not such as may be removed, is fatally defective, under Revised Stat-
utes of 1901, paragraphs 4035–4037, giving a *bona fide* settler on
school land the preferred right to lease the same on his making per-
manent improvements thereon as the result of labor or capital and
enhancing the value of the same.

3. SAME—IMPROVEMENTS.—A settler on school land who places thereon
a house, barns, corrals, fences, and who cleans off the undergrowth
to prepare the ground, and who uses the same for grazing purposes
or for dry farming, has the preferred right to lease the same, within
Revised Statutes of 1901, paragraphs 4035–4037.

4. SAME — "VALUABLE IMPROVEMENTS."—A frame house, firmly con-
structed on school land by a settler thereon, is a "valuable improve-
ment," and the building may be used by the settler for a warehouse
in which to store supplies for use on adjacent property, or to sell to
proprietors of adjacent property, or for a saloon to invite the patron-
age of employees on adjacent property; but if placed on blocks and
pillars, as such buildings frequently are, would not be appurtenant
to the realty, but could be readily removed, and neither tending to
develop or reclaim the land nor having enhanced the value of the
same, would not constitute either improvements or appurtenances
thereon as set forth in statutes cited *supra.*

APPEAL from a judgment of the District Court of the
First Judicial District, in and for the County of Pima.
John H. Campbell, Judge. Affirmed.

Otto W. H. Schley brought suit in the court below against
the board of supervisors of Pima county, Arizona, and F. B.
Close, alleging: That on December 30, 1905, and for a long
time prior thereto, he had been the actual *bona fide* occu-
pant of, and in possession of, certain school land situate at
or near Vails Station, in Pima county, Arizona. That prior
to said date, and while he was so occupying said lands and in
possession thereof, he placed thereon valuable permanent im-
provements. That during all such times he was willing and

anxious to lease said school lands from the board of supervisors, and that he had the preferred right to lease said school lands. That the board of supervisors and Close all the time knew that he was occupying said lands, and in possession thereof, and the improvements thereon, and that he had prior to December 30, 1905, caused to be placed on said lands valuable permanent improvements, and that he was willing and anxious to lease the same. That the board of supervisors, on or about December 30, 1905, with full knowledge of all these facts, and without any notice to him, made a purported lease of said lands to Close for five years. To the original complaint a demurrer was interposed by the defendants, and sustained by the court, and the same demurrer was later sustained to the first amended complaint. To the second amended complaint Close and the board of supervisors again demurred on the ground that it did not state facts sufficient to constitute a cause of action, and more particularly that the facts alleged were not sufficient to entitle the plaintiff to any preference right to lease said lands, which demurrer was also sustained by the court. Plaintiff chose to stand on his second amended complaint, and judgment was rendered against him. From this judgment plaintiff has appealed, and among his assignment of errors has alleged: ''That the court below erred: (1) In sustaining the demurrer to plaintiff's complaint. . . . (4) In holding that plaintiff's complaint did not state facts sufficient to constitute a cause of action.''

Francis M. Hartman, for Appellant.

The construction which equity would favor may be adopted by a court of law, in constructing a statute, if two constructions are fairly possible. *Wash. & I. R. Co.* v. *Coeur d'Alene R. & Nav. Co.,* 160 U. S. 77, 16 Sup. Ct. 231, 40 L. Ed. 346; *Knowlton* v. *Moore,* 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; *Lau Ow Bew* v. *United States,* 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340; *Heydenfeldt* v. *Daney Min. Co.,* 93 U. S. 634, 23 L. Ed. 995. In the construction of a statute, it is the intention and purpose of the law, not the letter, that must control, or the whole statute must be considered. *Leibes* v. *Steffy,* 4 Ariz. 11, 32 Pac. 261; *Western Inv. Banking Co.* v. *Murray, Treas. etc.,* 6 Ariz. 215, 56 Pac. 728; *American Sulphur & Mng. Co.* v. *Brennan,* 20 Colo. App. 439, 79 Pac. 750; *Twiggs* v. *State Board of Land Commrs.,* 27 Utah, 241, 75 Pac. 729; *Schneider* v. *Hutchison,* 35 Or. 253, 76 Am. St. Rep.

474, 57 Pac. 324; *Plummer* v. *Woodruff,* 72 Colo. 29, 11 Pac. 871, 13 Pac. 51; *Klasner* v. *Lumbley* (N. M.), 32 L. D. 137. As between two claimants of public land, it is the settled rule. of law that the first in time is the first in right. *Waldron* v. *United States,* 143 Fed. 413.

Frank H. Hereford, for Appellees.

It is a general rule that in asserting a right founded on a statute, a pleader should aver every fact necessary to inform the court that his case is within it. *Ezra* v. *Manlove,* 7 Blackf. (Ind.) 389; *People* v. *Jackson,* 24 Cal. 630; *Dye* v. *Dye,* 11 Cal. 163; 6 Ency. of Pl. & Pr. 263, 264.

DOAN, J.—Plaintiff's action was based upon his preferred right to lease the land. In order to state a cause of action, it was necessary, therefore, to allege in the complaint facts showing such right. The statute (Rev. Stats. 1901) authorizing boards of supervisors to lease such land provides:

"Par. 4035 (Sec. 4). Actual or *bona fide* settlers or occupants who have placed improvements on school or university lands, shall have the preferred right to lease the land whereon such settlement has been made.

"Par. 4036 (Sec. 5). 'Improvements' within the meaning of this title shall be held to mean anything permanent in character, the result of labor or capital expended on such land in its reclamation or development, and the appropriation of water thereon, which has enhanced the value of the same beyond what said land would be worth had it been permitted to remain in its original state.

"Par. 4037 (Sec. 6). Anyone occupying school or university lands refusing or not wishing to lease said land, and other parties making application so to do, the board of supervisors shall appoint three disinterested persons, householders and citizens of the territory, living adjacent to said land, and engaged in agricultural pursuits, if said land is agricultural in character, and engaged in stock raising if the land should be grazing, to go upon said lands and appraise the value of the improvements and appurtenances thereon as set forth in section 5 of this title, and make due return of said appraisement to the supervisors under oath, and they shall file the same, and the party wishing to lease shall pay to the board of supervisors the amount of such appraisement and the per diem of the appraisers, before the board of supervisors shall

execute a lease to him for said lands.    The money so paid for such improvements, the supervisors shall pay to the occupant of the land when he shall vacate said land, and give possession to the lessee. . . . ''

In order to acquire a preferred right to lease such land the above provisions require that a person be an actual and *bona fide* settler or occupant, and that he has placed on said lands improvements permanent in character, the result of labor or capital expended on such land in its reclamation or development, which has enhanced the value of the same beyond what said land would be worth, had it been permitted to remain in its original state.    The appropriation of water thereon is mentioned as an improvement of this character in recognition of the well-known and universally conceded fact that in this arid country an appropriation of water invariably operates to reclaim and develop the land to which it is applied, and to enhance the value of the same beyond what said land would be worth, had it been permitted to remain in its original state. The complaint alleges: ''That prior to the said thirtieth day of December, 1905, and during the time plaintiff was occupying said school lands and in possession thereof, he placed thereon valuable permanent improvements, and was during all such time, and is now, in the actual possession thereof, and occupying said improvements and said lands.''    This is the only allegation in the complaint tending to show in the plaintiff a preferred right to lease the land, or to impose upon the board of supervisors any duty to notify him of the application of Close to lease the said land, or to appoint a committee to appraise the improvements that are alleged in the complaint to have been placed thereon, and is insufficient to effect that purpose, for the reason that it is required by section 5 that, in order to confer a preferred right to lease, the improvements must not only be permanent in character, but they must be the result of labor or capital expended on such land in its reclamation or development, which expenditure has enhanced the value of the land beyond what it would be worth, had it been permitted to remain in its original state.    And paragraph 4037 (section 6), which provides for the appointment of appraisers to appraise the value of the improvements on such lands when the occupant thereof fails to apply for lease, and another applies therefor, confines such appraisement to ''the improvements and appurtenances thereon as set forth in section 5 of this title.''    Until, therefore, such improvements

as are set forth in section 5 are alleged to have been placed thereon, no duty to appoint such appraisers is shown. The complaint fails to allege that the improvements are the result of either labor or capital expended on the land in either its reclamation or development, or that such improvements or expenditures have enhanced the value of such land, or to allege any facts tending to establish either of these propositions, and the complaint therein is fatally defective, in that it for that reason fails to state facts sufficient to constitute a cause of action, and the general demurrer thereto on that ground was properly sustained.

It is urged by the appellant that placing upon school lands a dwelling-house, barns, corrals, fences, cleaning off the brush and undergrowth to prepare ground for grazing purposes, and the cultivation of the ground for raising crops thereon without irrigation should confer upon the occupant a preferred right to lease without the appropriation of water on such land. The answer to this is that in case the land was not susceptible of irrigation, and the occupant was using it for grazing purposes or for dry farming, these improvements unquestionably would confer such right, and constitute one class of improvements contemplated in paragraph 4037 (section 6); but the complaint in this case does not allege the placing upon the land described therein of any such improvements, and the appellant herein cannot, therefore, be aided by that fact. There is no allegation in the complaint that the improvements are not such as might be readily removed from the land, and therefore, though valuable and permanent in themselves, confer no enhanced value upon the land. A frame house, firmly constructed, would be a permanent structure, and could be properly termed a "valuable improvement," and might be used by the occupant for a warehouse in which to store goods or machinery or supplies to use on adjacent property, or to sell to operators of adjacent properties, or for a saloon to invite the patronage of employees of adjacent properties; but, if placed on blocks or pillars, as such buildings frequently are, it would not be an appurtenant to the realty, but could be readily removed and neither being the result of labor or capital expended on such land in its reclamation or development, nor having enhanced the value of the same beyond what said land would be worth, had it been permitted to remain in its original state, would not constitute either "improvements"

or "appurtenances" thereon, "as set forth in section 5" above cited.

The appellant elected in the lower court to stand upon his complaint, and let judgment be entered on the demurrer. Therefore the conclusion reached on this subject is decisive of the case, and renders unnecessary the consideration of the other questions presented.

The judgment of the lower court is affirmed.

KENT, C. J., and SLOAN and NAVE, JJ., concur.